IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TASHA F.,[1]                                          No. 6:22-cv-00677-JR

                    Plaintiff,                         OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.

RUSSO, Magistrate Judge:

        Plaintiff Tasha F. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Title II

Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social

Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final

orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

ECF No. 19. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

Born in December 1979, plaintiff alleges disability beginning October 10, 2016, with a date last insured of June 30, 2017. Tr. 233-48. Plaintiff alleged disability due to osteoarthritis in her back and neck, fibromyalgia, and restless leg syndrome. Tr. 268. Her application was denied initially and upon reconsideration. Tr. 134-43, 148-55. On May 4, 2021, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") B. Hobbs. Tr. 31-56. On July 28, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 11-30. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since October 10, 2016, the alleged onset date. Tr. 16. At step two, the ALJ determined the following impairments were medically determinable and severe: "fibromyalgia, cervical degenerative disc disease, generalized anxiety disorder, depression, and migraines." Tr. 17. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b) except:

> [S]he can never climb ladders, ropes, or scaffolding. She can occasionally stoop, kneel, crouch, and crawl. She can frequently handle and finger with both upper extremities. The claimant can tolerate no hazards, such as operating heavy, industrial machinery, and unprotected heights. The claimant is able to remember,

understand, and carry out simple and routine instructions and tasks, consistent
with the learning and training requirements of SVP level 1 and 2 type jobs. She
can have no more than occasional changes in a routine work setting.

Tr. 19.

At step four, the ALJ found plaintiff unable to perform any past relevant work. Tr. 23. At

step five, he found that plaintiff retained the ability to perform other jobs in the national

economy such as marker, router, and routing clerk. Tr. 23-24. The ALJ therefore found plaintiff

not disabled. Tr. 24.

## DISCUSSION

Plaintiff argues the ALJ committed three harmful errors. She contends the ALJ erred by

(1) improperly rejecting her symptom testimony, (2) rejecting relevant lay witness testimony

without a germane reason for doing so, and (3) improperly evaluating Yumi Aikawa, DO.'s

medical opinion. For the reasons that follow, the Court finds the ALJ did not err, and affirms.

## I.    Symptom Testimony

Plaintiff first contends the ALJ erred by discrediting her testimony that pain limited her

ability to manage an eight-hour workday. Pl.'s Br., ECF No. 13 at 9-15. When a claimant has

medically documented impairments that could reasonably be expected to produce some degree of

the symptoms complained of, and the record contains no affirmative evidence of malingering,

"the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering

specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th

Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is

insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests

the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The

reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the

ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff testified at the hearing about pain in her shoulders, neck, lower back, and hips. Tr. 42. She was really sensitive to touch. Tr. 42. She experienced sciatica in both legs. Tr. 42. She typically spent about six hours in an eight-hour period lying down because of pain. Tr. 42-43. This had not changed despite getting some benefit from acupuncture treatments, which typically provided about two days of relief. Tr. 43-44. She took Amitriptyline at night but still felt tired the next day. Tr. 44-45. Pain and fatigue impacted her focus and concentration, as did anxiety and depression. Tr. 45, 47. She isolated when depressed. Tr. 48. She experienced shooting pain from her shoulders into her hands, as well as numbness in her hands. Tr. 45-46. She experienced three migraines a week. Tr. 46. She enjoyed going on short walks, two or three blocks in distance. Tr. 48-49. She also enjoyed going fishing and rock hunting on good days to get out of the house. Tr. 49, 51. Her boyfriend did most of the driving. Tr. 51.

In written testimony, she reported experiencing "shooting pain" in her neck, shoulders, arms, hands, hips, and legs each morning. Tr. 298. She experienced numbness in the hands. Tr. 298. She could not sit or stand for too long, and she had to lie down "to get the pain to go away." Tr. 298. In a typical day, she got up, fed herself and her pets, "pick[ed] up a little bit around the house, watch[ed] some TV, [did] 1 chore a day, shower[ed], ma[d]e dinner," and went to bed. Tr. 299. She was able to prepare simple meals. Tr. 300. She was able to drive. Tr. 301. She grocery shopped with her father once a week. Tr. 301. She attended church and went to doctor appointments. Tr. 302. She got out of the house once or twice a week; she "[took] part in what [she could], not overdoing it." Tr. 302. Her ability to get along with others depended on her pain levels. Tr. 303. Her impairments impacted her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, use her hands, and get along with others. Tr. 303. She could walk for about twenty minutes before needing to stop and rest for thirty to sixty minutes. Tr. 303. She did not finish what she started. Tr. 303. She struggled to follow instructions. Tr. 303. She did not handle stress well and did not like changes in routine. Tr. 304. Her medications caused drowsiness, dizziness, memory loss, and fatigue. Tr. 305.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 20. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20. Specifically, the ALJ found plaintiff's symptom allegations about her fibromyalgia were inconsistent with objective medical evidence, her treatment history and her daily activities. Tr. 20-23.

A.      *Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006).

The ALJ failed to identify any objective medical records that conflicted with plaintiff's testimony about the extent her fibromyalgia pain. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, plaintiff testified about pain in her shoulders, neck, lower back, and hips that caused her to spend about six hours in an eight-hour period lying down. Tr. 42- 43. Plaintiff also claimed that she could walk only 20 minutes before needing to rest, and had problems lifting, bending, reaching, and sitting. Tr. 42-43, 298, 303. The ALJ cited medical exams that were "mild to unremarkable," reflecting plaintiff's normal range of motion, normal strength, and normal gait. Tr. 20 (citing Tr. 433, 442, 480, 502, 512, 523-24, 534-35, 586, 590, 602, 626). But as the Ninth Circuit has pointed out, fibromyalgia is distinct because "those suffering from it have muscle strength, sensory functions, and reflexes [that] are normal," and "there are no laboratory tests to confirm the diagnosis." *Revels v. Berryhill*, 874 F.3d 648, 656

(9th Cir. 2017) (internal citations omitted). The medical records the ALJ characterizes as "mild" because they show plaintiff's strength, gait, and range-of-motion therefore do not conflict with a disease, like fibromyalgia, where the symptoms do not show up in these kinds of tests. In fact, several of the medical records the ALJ cites show plaintiff's pain worsening despite normal gait or strength. *See, e.g.,* Tr. 433 (pain "progressively worsened"), 575 ("continues to have pain everywhere…worsening right hip pain"). The ALJ also cited the fact that as late as 2020, "claimant's condition had not been diagnosed by a rheumatologist." Tr. 20. But the ALJ accepted plaintiff's fibromyalgia as a medically determinable impairment, Tr. 17, and further found plaintiff's "medically determinable impairments [for example, fibromyalgia] could reasonably be expected to cause the alleged symptoms." Tr. 20. The timing of a rheumatologist's diagnosis does nothing to undermine plaintiff's pain testimony. In sum, because the ALJ failed to identify objective medical evidence that conflicted with plaintiff's fibromyalgia testimony, this was not a clear and convincing reason to discount it.

### *B. Improvement with Treatment*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (noting "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ provided a clear and convincing reason to discount plaintiff's symptom testimony when he concluded that plaintiff's fibromyalgia symptoms improved with treatment. Evidence that treatment improves a claimant's symptoms can be a clear and convincing reason for discounting a plaintiff's symptom testimony. *Wellington*, 878 F.3d at 876. In contrast to plaintiff's testimony that her fibromyalgia pain required her to lie down most of the day (Tr. 42-42, 298), the ALJ noted that the record showed treatment often successfully relieved her symptoms. Tr. 20. In early 2021, for example, plaintiff went to a wellness exam and was "[d]oing well without new concerns." Tr. 585. She felt like her fibromyalgia symptoms were improving slowly, she characterized her pain as "manageable," and she was "stay[ing] functional." Tr. 585; see also Tr. 668 ("she is experiencing less pain overall and has increased activity level during the day"). She also reported that conservative measures, like acupuncture, relieved her pain—even up to 70 percent. Tr. 660, 672. Although she still had some problems with her neck, her shoulders and neck felt "much better," without any sharp pain. Tr. 660, 653 ("neck has been pain free" and "currently doesn't have back pain"). The ALJ cited numerous records from 2018 through 2020, as well, showing that plaintiff's physical functioning was relatively intact. Tr. 20 (citing Tr. 433, 442, 480, 502-03, 524, 535, 576, 602, 606, 626). In fact, in early 2020, plaintiff's fibromyalgia was "clinically stable on [the] current medication regimen." Tr. 503; *see also* Tr. 626 ("Relatively stable pain level."). Moreover, the ALJ accounted for any fluctuations in plaintiff's pain levels by restricting her to a range of light work, with various postural, environmental, and mental limitations. Tr. 19. In all, the ALJ cited substantial evidence that treatment improved plaintiff's symptoms, undermining some of plaintiff's more extreme testimony like that she had to lie down most of the time.

Plaintiff argues these records cannot be substantial evidence because of the waxing and waning nature of her fibromyalgia pain. In her testimony, plaintiff acknowledged that she had good days and bad. Tr. 50-51. And when asked by the ALJ if she could perform light work she emphasized that her fibromyalgia pain on her bad days rendered her too fatigued and too physically limited to work, and that her "regime daily is treating [her] pain." *See* Tr. 50-51. The ALJ acknowledged that "the severity of the claimant's fibromyalgia cannot be ascertained from objective findings alone," Tr. 20, but the analysis does not stop there simply because a plaintiff's symptoms come and go. *See* SSR 12-2p, 2012 WL 3104869, at *6 (Evaluation of Fibromyalgia) (noting ALJs must consider the "longitudinal record whenever possible" in assessing a person's fibromyalgia pain). Here, the ALJ reasonably accounted for plaintiff's symptoms by incorporating postural and rest-related limitations into the RFC, but rejected some of her more significant allegations because the record showed many instances—over several years—of treatment improving her fibromyalgia symptoms. That is a clear and convincing reason, supported by substantial evidence, for discounting these aspects of plaintiff's testimony.

    *C. Daily Activities*

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 20. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and

preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded that several of plaintiff's daily activities conflicted with her testimony about fibromyalgia and the resulting pain, fatigue, and weakness. To discount a plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ compared plaintiff's testimony about, for example, her need to lie down most of the day and difficulty walking, lifting, bending, sitting, and concentrating (Tr. 42-43, 47, 298, 303) with evidence that she takes walks regularly, exercises, goes out to eat often, goes rock hunting, does art projects, fishes, and performs various chores, like laundry, cooking, and sweeping. Tr. 300, 327, 494, 585, 621, 653, 668. Several of these activities conflict with plaintiff's allegations of fatigue, weakness and pain. During the hearing, the ALJ even noted that these activities might indicate an ability to do light or sedentary work. Tr. 50-51. Plaintiff disagrees, and asks the Court to put less weight on the evidence of her daily activities than the ALJ. Pl. Br. at 13. Plaintiff's effort to have this Court re-weigh the evidence, however, is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). This was another clear and convincing reason for the ALJ to rely upon to discount plaintiff's testimony about the extent of her fibromyalgia pain.

## II.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Two lay witnesses provided testimony in support of plaintiff's application: her boyfriend and her daughter. First, plaintiff's boyfriend reported that plaintiff was in constant pain; her pain had worsened over time. Tr. 323, 354. She was unable to stand for more than twenty minutes. Tr. 323. She experienced high anxiety. Tr. 323. Her sleep was affected by muscle spasms and

restless legs. Tr. 324. It took her longer to dress, bathe, and shave. Tr. 324. She was able to make

her bed, dust, and do laundry by taking breaks between chores. Tr. 325. She needed to be

motivated to complete these tasks when depressed. Tr. 325. She was able to drive and go out

alone. Tr. 326. She went fishing and rock hunting about once a month. Tr. 327. She was unable

to do most physical activities because of her condition. Tr. 327. The only places she went on a

regular basis were to appointments and to the store. Tr. 327. Pain triggered her anxiety and

stress. Tr. 327. Her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit,

kneel, climb stairs, understand, follow instructions, use her hands, and get along with others. Tr.

328. She was able to walk for twenty minutes before needing to stop and rest. Tr. 328. She was

able to pay attention "just fine" when not experiencing pain. Tr. 328. She handled stress "as well

as anybody else." Tr. 329. She did not handle changes in routine well because her routine was

based around managing her pain. Tr. 329. Her boyfriend drove her to appointments because she

tended to forget what providers said to her. Tr. 354.

The ALJ provided several germane reasons to reject this testimony. Although defendant

suggests the ALJ "was not even required to articulate how she considered these nonmedical

statements," this Court still requires ALJs to provide germane reasons for dismissing lay witness

testimony. *See, e.g., Nichole M. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 2889777, at *8 (D. Or.

Apr. 11, 2023). The ALJ reasonably disregarded these statements as internally inconsistent and

in conflict with the medical record. Tr. 22. The ALJ's clear and convincing reasons for

discounting plaintiff's testimony apply equally to the lay testimony. Since the ALJ provided

germane reasons supported by substantial evidence to discount these statements, the Court will

not disturb the ALJ's conclusion on review.

### III. Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in rejecting Yumi Aikawa, DO's medical opinion. Pl. Br. at 5-9. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Plaintiff established care with Dr. Aikawa in November 2019. Tr. 474, 511. In February 2020, Dr. Aikawa reported in a written statement that she typically saw plaintiff once a month. Tr. 474. Plaintiff's diagnoses included fibromyalgia and anxiety, both of which were chronic conditions. Tr. 474. Her symptoms included widespread aches and pains and anxiety. Tr. 475. Relevant clinical findings included tender points all over. Tr. 475. Plaintiff's treatment included

Duloxetine, Ibuprofen, Gabapentin, and behavioral health counseling. Tr. 475. Her medications could be mildly sedating. Tr. 476.

Dr. Aikawa opined that plaintiff would have to lie down or rest periodically during the day, and that this "may depend on the day due to pain waxing and waning." Tr. 475. Plaintiff could sit for sixty minutes at a time and four hours total in an eight-hour workday. Tr. 476. She could stand/walk for sixty minutes at a time and one hour total in an eight-hour workday. Tr. 476. She needed opportunities to shift positions at will from sitting, standing, or walking. Tr. 476. She would need approximately two unscheduled, thirty-minute breaks in an eight-hour workday due to pain, stiffness, and anxiety attacks. Tr. 477. She could lift/carry less than ten pounds frequently, ten pounds occasionally, and never more than ten pounds. Tr. 477. She would need to periodically elevate her legs in a physical eight-hour period. Tr. 478. She would be off task 25% or more of a workday. Tr. 478. She would miss more than four workdays per month due to pain and stiffness, difficulties with ambulation/mobility, and panic attacks related to pain process. Tr. 478. The ALJ rejected Dr. Aikawa's opinion as lacking support and as inconsistent with several other aspects of the medical record. Tr. 21.

Regarding supportability, the ALJ adequately discussed the strength of the evidence underlying Dr. Aikawa's opinion when finding it unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). First, the ALJ noted that Dr Aikawa did not include any medical documentation to substantiate the limitations she provided in her opinion. Tr. 21-22. The ALJ also reasonably concluded the medical opinion was unpersuasive because it conflicted with Dr. Aikawa's own treatment notes. Tr. 21-22. Elsewhere,

Dr. Aikawa noted that plaintiff was "[d]oing well without new concerns," her fibromyalgia symptoms were improving slowly, she characterized her pain as "manageable," and she was "stay[ing] functional." Tr. 585. Her physical functioning was largely intact (Tr. 502-03, 576, 602, 606, 626), her fibromyalgia was "clinically stable on [the] current medication regimen," and she had a "[r]elatively stable pain level." Tr. 503, 626. The ALJ adequately considered the supportability of Dr. Aikawa's opinions and reasonably cited the lack of support those opinions had in the record when finding them unpersuasive.

The ALJ also adequately addressed the consistency of Dr. Aikawa's opinions. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). In contrast to the disabling limitations Dr. Aikawa described, treatment records illustrated that conservative measures, like acupuncture, relieved plaintiff's pain up to 70 percent. Tr. 660, 672. Despite some problems with her neck, her shoulders and neck felt "much better," without any sharp pain. Tr. 653, 660. Multiple records showed that plaintiff had mostly normal physical findings. Tr. 433, 442, 480, 524, 535. Additionally, plaintiff engaged in numerous activities showing she functioned better than Dr. Aikawa predicted, including taking walks regularly, exercising, going out to eat often, going rock hunting, doing art projects, fishing, and performing various chores, like laundry, cooking, and sweeping. Tr. 300, 327, 494, 621, 653, 668. 104. Ultimately, the Court finds that the ALJ sufficiently addressed the consistency and supportability factors, and supported the decision to discount Dr. Aikawa's opinions with substantial evidence.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED this 11th day of September, 2024.


  /s/ Jolie A. Russo
_____
Jolie A. Russo
United States Magistrate Judge